UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) CASE NO. 1:22-cv-1554 |
| | ) |
| | ) JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| KRIS SWAFFER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Before the Court is the motion for default judgment against Defendant POHIH, Inc. filed by Plaintiff United States Securities and Exchange Commission. (Doc. 48.) For the reasons explained below, the motion is GRANTED.

**I.    Background**

    **A.    Factual Background**

From at least September 2016 through February 2020, Kris Swaffer ("Swaffer") engaged in unregistered, fraudulent offerings of securities and misappropriation of funds. (Doc. No. 1, at PageID #1.)[1] Sean Williams ("Williams") joined and participated in the fraudulent scheme after Williams began working with Swaffer in early 2017. (*Id.*) Swaffer and Williams engaged in their scheme through an entity called POHIH, Inc. ("POHIH"), as well as other entities Swaffer controlled, including 5 Letters, LLC and MAK North America, LLC (collectively, the "Pure Organic Entities"). (*Id.*)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

In 2016, Swaffer organized and acquired the Pure Organic Entities for purposes of engaging in the cultivation of marijuana for commercial purposes. (*Id.* at 6.) In October 2016, Williams invested in the Pure Organic Entities. (*Id.*) Soon after, Williams began assisting Swaffer in raising money from investors. (*Id.*) In February 2017, Williams became the Chief Operating Officer of 5 Letters, one of the Pure Organic Entities. (*Id.*) After Williams invested in the Pure Organic Entities, Swaffer began raising money from investors by offering and selling membership interests and stock in the entities, including MAK North America, the direct predecessor to POHIH. (*Id.* at 6–7.) Williams joined Swaffer in these efforts. (*Id.* at 7.) Between October 2016 and April 2018, Swaffer and Williams offered and sold membership interests in MAK, raising $5.6 million from at least 33 investors in multiple states. (*Id.*) Swaffer then formed POHIH in April 2018 as MAK's successor. (*Id.*) From April 2018 through June 2019, Swaffer and Williams offered and sold stock in POHIH, raising $5.8 million from at least 37 investors in multiple states. (*Id.*) During the September 2016 through February 2020 timeframe, Swaffer and Williams raised approximately $14 million from 75 investors. (*Id.*)

When Swaffer and Williams recruited investors, they made no effort to assess investor sophistication or accreditation status. (*Id.*) Unaccredited investor participated in some of the offerings. (*Id.*) Swaffer and Williams told investors that they would pool money raised and use it to fund the operations of the Pure Organic Entities. (*Id.* at 8.) No registration statement was ever filed with the SEC with respect to these investments. (*Id.*)

In January 2017, Swaffer and Williams distributed a memorandum to a potential investor which disclosed certain risks associated with the Pure Organic Entities investment. (*Id.* at 9.) These risks included risk criminal liability for the investor or entities because marijuana is federally illegal and that banks may not provide services to the Pure Organic Entities due to

2

federal law. (*Id.*) However, after January 2017, Swaffer and Williams did not disclose these risks to investors. (*Id.*) Instead, Swaffer and Williams reported to potential investors that the operations were fully licensed and could legally operate. (*Id.*) At the same time, Swaffer moved funds relating to the Pure Organic Entities through several accounts after the financial institutions closed the accounts because of the association with marijuana. (*Id.* at 10.) Because of Swaffer's inability to open accounts, Swaffer and Williams instead funneled money to an entity called SRTK. (*Id.*) Williams owned that entity, but it was unaffiliated with the Pure Organic Entities. (*Id.*) Nonetheless, Swaffer and Williams began directing investors to send money to that entity and corresponding account. (*Id.*)

During this time, Swaffer and Williams engaged in a series misappropriation and misuse of investor funds. (*Id.* at 11–17.) For instance, Swaffer and Williams used investor funds to pay off debts and for personal uses. (*Id.*) The misappropriation and misuse included the use of funds by Rosalyn Swaffer, Swaffer's wife. (*Id.* at 14–15.) Swaffer and Williams never made any distributions to investors. (*Id.* at 17.) The scheme collapsed in 2020 and 2021. (*Id.* at 17.)

**B.      Procedural History**

The SEC filed its Complaint on September 1, 2022. (Doc. 1.) The Complaint alleged five claims: violations of Section 10(b) of the Exchange Act (Count One); violations of Section 17(a)(1) of the Securities Act (Count Two); violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act (Count Three); violations of Sections 5(a) and 5(c) of the Securities Act (Count Four); and unjust enrichment (Count Five). (*Id.* at 18–21.) Only Count Four is asserted against POHIH. (*Id.* at 21.)

Williams filed an answer to the Complaint on November 22, 2022. (Doc. 16.) Kris Swaffer and Rosalyn Swaffer filed an answer on December 1, 2022. (Doc. 17.) To date, POHIH

has not filed an answer.  The Court held a case management conference on February 17, 2023.  (Doc. 24.)  At that time, Williams retained counsel, but Kris Swaffer and Rosalyn Swaffer had not.  Similarly, no attorney participated on behalf of POHIH.  Subsequently, Williams' counsel moved to withdraw which the Court granted by minute order dated May 8, 2023.

Because POHIH never answered, the SEC submitted an application to the Clerk for an entry of default on December 19, 2023.  (Doc. 33.)  The Clerk entered default on January 4, 2024.  (Doc. 34.)  On June 25, 2024, the SEC, Kris Swaffer, Rosalyn Swaffer, and Williams engaged in mediation.  That mediation resulted in a settlement agreement between the parties.  The SEC moved for an entry of consent judgments as to Kris Swaffer, Rosalyn Swaffer, and Williams.  (Doc. 47.)  Further, the SEC moved for default judgment against POHIH.  (Doc. 48.)

## II. Analysis

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After entry of default under Rule 55(a), the party seeking relief may apply for a default judgment under Rule 55(b).  Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments.  *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  While the factual allegations are taken as true, the court is still

4

"required to 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Poskovic v. D2 Mgmt., LLC*, No. 19-cv-1222, 2019 WL 6727098, at *1 (N.D. Ohio Dec. 11, 2019) (*Gilden v. Platinum Holdings Grp., LLC*, No. 18-cv-343, 2019 WL 590745, at *2 (S.D. Ohio Feb. 13, 2019)).

### B. Violations of Sections 5(a) and 5(c) of the Securities Act

Count Four of the Complaint alleges that POHIH, along with Swaffer and Williams, violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c). (Doc. 1 at 20.) "The Securities Act and the required filing of registration statements under Section 5 exist to protect investors by requiring they receive sufficient information to make informed investment decisions." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 328 (6th Cir. 2013) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953)). "Sections 5(a) and 5(c) of the Securities Act together require that securities be registered before they can be sold or offered for sale." *Id.* (citing 15 U.S.C. §§ 77e(a), (c)). "A violation of Section 5 occurs when: (1) no registration statement is in effect for securities, (2) the defendant directly or indirectly sold or offered to sell the securities, and (3) means of interstate transportation or communication were used in connection with the offer or sale of such securities." *SEC v. Integrity Fin. AZ, LLC*, No. 10-cv-782, 2012 WL 176228, at *4 (N.D. Ohio Jan. 20, 2012) (citing *SEC v. Sierra Brokerage Servs., Inc.*, 608 F.Supp.2d 923, 938–39 (S.D. Ohio 2009)). A party is strictly liable for violations of Section 5, and therefore, scienter is not a required element. *Id.*

The Complaint establishes that POHIH violated Sections 5(a) and 5(c) of the Securities Act. The investments offered and sold by POHIH were securities within the meaning of Section 2(a)(1) of the Securities Act, which includes, among other things, "stock." 15 U.S.C. § 77b(a)(1). POHIH never filed a registration statement. (Doc. 1 at 8.) The POHIH stock was

5

offered and sold in multiple states through email, telephone communications, and interstate wire transfers. (*Id.* at 8–17.) In essence, Swaffer and Williams used POHIH through which POHIH directly offered and sold its stock accomplished through interstate communications without ever filing a registration statement. These allegations establish liability for violations of Sections 5(a) and 5(c) of the Securities Act.

      C.      **Permanent Injunction**

The SEC requests a permanent injunction enjoining POHIH from further Section 5 violations. (Doc. 48 at 350.) The Securities Act permits the SEC to seek a permanent injunction when an entity "is engaged or about to engage in any acts or practices which constitute or will constitute a violation." 15 U.S.C. § 77t(b). "To obtain a permanent injunction, the Commission must aver that a violation has occurred and that there is a reasonable likelihood of future violations." *SEC v. Graham*, No. 20-cv-2505, 2021 WL 5280509, at *4 (N.D. Ohio Nov. 12, 2021). The Sixth Circuit has provided the following relevant factors for courts to consider the likelihood of future violations: (1) the egregiousness of the violations, (2) the isolated or repeated nature of the violations, (3) the degree of scienter involved, (4) the sincerity of the defendant's assurances, if any, against future violations, (5) the defendant's recognition of the wrongful nature of his conduct, (6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations, and (7) the defendant's age and health. *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984).

The Court finds that the relevant factors weigh in favor of a permanent injunction enjoining POHIH from future violations of Section 5 of the Securities Act. The first two factors weigh in favor of a permanent injunction because POHIH, through Swaffer and Williams, repeatedly offered and sold securities over the course of several years without any registration

statement in effect. As for the fourth factor, POHIH, which has not responded to this litigation, has provided no assurance against future violations. Moreover, as to the sixth factor, there is a likelihood that POHIH may be used in the future for violations of Section 5 of the Securities Act. While, as the SEC points out, POHIH is currently defunct, Swaffer could use POHIH to raise funding from investors in the future given Swaffer's history of raising funds through successive, related entities over several years. Because the above factors weigh in favor of a permanent injunction, the Court orders that POHIH is permanently enjoined from violating Section 5 of the Securities Act.

> D. **Civil Penalties**

The SEC requests a first-tier penalty of $115,231. (Doc. 48 at 351.) Section 20(d) of the Securities Act authorizes civil money penalties for violations of the Securities Act. 15 U.S.C. § 77t(d)(1). "[T]he purpose of civil money penalties is to serve as a deterrent against future misconduct." *Integrity Fin.*, 2012 WL 176228, at *8 (citing *SEC v. Conaway*, 697 F.Supp.2d 733, 747 (E.D. Mich. 2010)). Section 20(d) divides potential civil penalties into three tiers. 15 U.S.C. § 77t(d)(2). The first tier provides for a penalty for any violations of the Securities Act, while the second and third tiers provide for a penalty when such violations "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B), (C). "While the statutes provide guidelines for imposing a civil money penalty, the court has discretion to determine the appropriate amount of such penalty." *Integrity Fin.*, 2012 WL 176228, at *8. "The amount of the penalty shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A). "When determining the amount of a civil money penalty, the court should consider the following factors: '(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's

7

conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.'" *Integrity Fin.*, 2012 WL 176228, at *8 (quoting *SEC v. Forest Resources Mgmt. Corp.*, No. 09 Civ. 0903, 2010 WL 2077202, at *2 (S.D.N.Y. May 18, 2010)). For first tier penalties, the maximum penalty is $5,000 for a "natural person" or $50,000 for "any other person." 15 U.S.C. § 77t(d)(2)(A). These amounts are periodically updated to adjust for inflation. *See Integrity Fin.*, 2012 WL 176228, at *8. Currently, the maximum penalty is $115,231 for "any other person." Thus, the SEC requests the lowest tier penalty, but the maximum amount under that tier.

The Court finds that a first-tier penalty in the amount of $115,231 is warranted. POHIH's conduct was egregious. It was the vehicle through which Swaffer and Williams used to collect millions of dollars from investors when its entire operation was fraudulent. This conduct created a substantial loss to others. The scheme lasted for over four years and reoccurred throughout 2016-2020. POHIH, having failed to respond to this lawsuit, has not demonstrated that its current or future financial condition warrants a reduction in the civil penalty. Accordingly, the Court grants the SEC's request for a first-tier penalty in the amount of $115,231.

### III. Conclusion

For the reasons stated above, the motion for default judgment is GRANTED. The Court permanently enjoins POHIH from future violations of Section 5 of the Securities Act and issues a civil penalty in the amount of $115,231.

**IT IS SO ORDERED.**

**Date**: September 13, 2024

                                                                                        *s/ Bridget M. Brennan*
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE